We'll turn to our last argument of the day, 25-6082, U.S. v. Noles. Good morning, your honors. May it please the court. Bailey Tulloch for the appellant, Jerry Wayne Noles. In United States v. Allen, this court made clear that even though a district court has discretion to consider a defendant's unadjudicated, non-relevant conduct during sentencing, a district court abuses its discretion when it gives undue weight to that conduct in fashioning an upward variance, particularly a major upward variance. So if you're going to cite Allen for that, tell us about the facts there, because that was a really extraordinary case, was it not? Yes, it was. And the judge sentenced him for stuff that wasn't charged, totally unrelated offense. That's right. So you state a principle there, but it was pretty limited in that case. You agree? I would agree that the facts are different from this case, but the principle...  I agree, yes. But the principle that applies from that case, which is the structural problem we have here, fundamentally, the district court imposing a major upward variance based primarily on Mr. Noles' unadjudicated and non-relevant conduct. Well, in Allen, we said the problem was that the court abandoned consideration of the guidelines. Indeed. So I think you're colloquy with Judge Hartz, you agree that the facts are different, but I think the holding is also quite narrow, or it applies to a specific kind of error. And why do we have that here? I think the holding applies to the broad principle, and the court was certainly troubled by the fact that the district court in that case discarded the guideline range completely. But we do have the district court in this case calling the advisory guideline range grossly inadequate, or grossly understating the offense of conviction, without identifying what exactly it was about the offense of conviction itself that was so serious, that distinguished Mr. Noles' case from a garden variety fraud case, except for this unadjudicated, non-relevant conduct. So that's the issue here, and that's the principle that we draw from Allen. So you're saying the amount of the loss was non-adjudicated, totally irrelevant? You don't think it was part of the same scheme, same effort by the defendant? Are you referring to the amount of loss that was incurred as a result of the non-relevant conduct? I'm asking what you're referring to, and I think you're referring to the amount of the loss, the half million or million dollar loss. Yes. The amount of loss that I'm referring to is what was calculated in the guideline range, which was the 129, which accounted for all of the loans, but it did account for the collateral that Mr. Noles sold, and under the guidelines, that's how that intended loss is calculated. I thought your argument was that even though you prevailed on the application of the gross receipts enhancement, that the court still considered the underlying conduct for that enhancement in its 3553A analysis. I thought you were contending that that was the over-reliance. No, Your Honor. The gross receipts enhancement referred to the relevant conduct. So as to that particular enhancement, the district court did not look to non-relevant conduct. All of those objections had been resolved prior to the court's ruling on that. So you agree the court could look at that? The loss you're talking about is for what? Yes, it could, but the district court did not refer to that loss in its explanation, and this court has made clear that when we review for substantive reasonableness, we look to the district court's explanation, and that factor is missing in the explanation. I'm still confused. What did the court consider that it shouldn't have? Be very specific, not just say non-relevant conduct. What was the conduct that the court considered that it should not have considered? Absolutely, Your Honor. It's the conduct that was dismissed from the indictment, which the court, and I'll walk the court right now through the different instances where we see that. Conduct that he was charged with in the indictment, but pursuant to the plea agreement, was not charged. That's right. Those charges were dismissed. Well, certainly, courts can consider dismissed counts. Absolutely, Your Honor. Yes. So what made this different? What made this different is the weight afforded to that conduct. So it's certainly not the consideration of that conduct. It's the weight and the proportionality of the use of that conduct that's the problem here. OK, and what was the use of it? What was the proportion? Explain very concretely what it was.  So I'll just walk the court through where in the record we're seeing that excessive reliance. And so first, when the district court frames the nature and circumstances of the offense, it starts by talking about the indicted conduct. And it talks about the span of conduct. What conduct? Please be, don't just say the indicted. I'm totally missing what you're referring to. OK, sure. What I'm referring to specifically are the counts in the indictment that refer to the PPP loan fraud and the bankruptcy fraud. Those are the- And you're saying that's just totally unrelated to his culpability? Under the guidelines, yes. And Alan talks about that relatedness principle. And this was actually something that the probation officer discussed, this concept of expanded relevant conduct, where you still have to have, in order for it to be relevant under the guidelines and contribute or be contemplated as part of the defendant's culpability, it still needs to have a similar motive, similar accomplice, similar victim. And the probation officer and the district court affirmed that those factors were not present here. And I don't believe the government has disputed this. It wasn't conduct in which he obtained money through fraud? Yes, Your Honor. But that's totally irrelevant to conviction for obtaining money through fraud? Under the guidelines, yes. It's non-relevant conduct. And I don't know that anybody, that the government or the district court dispute that fact. That's a lot more closely related than a dreamed-of sex offense in Alan, which had nothing to do with the charges on which he had been convicted. That's right, Your Honor. But I think that Alan is concerned with the weight, not necessarily the relevance. So again, we do agree that the district court could consider that conduct, but it's the weight afforded to that conduct that's the problem. You were starting to go through how the judge gave it too much weight. Go ahead. Sure. So I think I'd started with the nature and circumstances of the offense. The district court framed the nature and circumstances of the offense using that indicted conduct. And it did then talk about the specifics of the offense of conviction, but it didn't identify anything aggravating when it discussed the offense of conviction. Now, so this first reference is when Judge Dishman refers to the facts of the case. Yes. But the district court does come back to that when the sentence is ultimately issued, saying, I believe the nature and circumstances of this offense grossly understate the advisory guideline range. So referring back to that span of conduct, which in any point where we see the district court grappling with these factors and having pause, and in fact, there's an instance, I'm looking at volume two, page 76, where the district court is discussing deterrence and protection of the public. And the district court talks at length about many mitigating factors. Mr. Knoll's age, his lack of criminal history, his performance on bonds, but it's specifically not the offense of conviction, but it's the unadjudicated conduct, which she calls the span of criminal conduct, indicted but not pled guilty to, that the district court says, this is what's giving me pause as weighed against these mitigating factors. So I think that's particularly important here because we're seeing that it is this unadjudicated conduct that the district court is grappling with, not the seriousness of the offense of conviction. And when we read the explanation as a whole, we do see that the only feature of this case that really does distinguish it from a typical fraud case is that unadjudicated conduct, which, again, can be considered. But in this case, we have a significant upward variance, a 122% upward variance, and that requires more. And that's from, yes, go ahead. You finish your sentence. I was just going to say, it stems from the Supreme Court's holding in gall that a major upward variance requires a more significant justification. OK, now, I was trying to find it and I couldn't, but I'm going to go by my very dim memory. I thought Judge Dishman was, she does make three comments. That you point to in your briefing. But she also, in a few places, says, but I'm not sentencing you for those things. And what she says is that there is a victim and the victim lost a lot of money. And now you have a good argument, I think, in your reply brief that, well, that's what fraud does. Fraud victimizes people. And so why would that be an aggravating factor? But that's a little different from your Allen argument that she is, that she's varying upward because of these other unadjudicated offenses, because she is very specific about about what she is relying on. And it's not those unadjudicated offenses. It's the fact that there was a victim and the victim lost a lot of money. Well, I think two things. I think that that reference to the victim, that's as part of the district court's initial discussion of the offensive conviction. So it is noted, but it's a very brief reference. And it's not mentioned again in the explanation of the sentence. And as to your other point, which is, I think you were referencing when she says, I'm careful not to overweigh criminal conduct. Well, she says, yeah, that's one of them. But there's another place that I can't find it. That that's the one that I recall. And that's the one where she follows within that same sentence. But it is this span of indicted conduct that's really giving me pause. So I think that disclaimer kind of follows with the idea that labels don't control. We look to the substance of what's being said. So even though there was this statement, well, I'm not I'm not overweighing it. When we look at the substance of what was actually considered, that that is what happened. I'm going to ask you a very unfair question, but it's bothering me. And it is following up on what my colleague has asked you about Allen. In Allen, I think Judge McConnell is saying not only did the district court rely on these, you know, imaginary or real fantasies about killing and raping and murdering young girls, but the district the district court actually applied the guideline range that would apply for offenses that he wasn't ever charged with. And I think we've distinguished Allen in six presidential opinions. We've never relied on it to my knowledge in saying that in any situation short of it, we haven't had a case yet that where they've applied the guideline range for unadjudicated offenses. But to say that, well, Judge Dishman said a couple of times that, you know, she is, you know, putting she's considering these unadjudicated, these dismissed charges, but she's careful not to overweigh that. My unfair question is, how do we say that for the very first time when we've never, ever relied on Allen in anything short of the, as Judge Hartsch really points out, the extraordinary reliance on a guideline range for something the guy was never even charged with? Yeah, I think that's a fair question, Your Honor. And my response would be this court hasn't been presented with a factual scenario like this one before, where we have both unadjudicated and non-relevant conduct at issue. And the district court doesn't identify anything specific to the offensive conviction that aggravates it. So so this is the first example we have where there is only one example in the district court's explanation that points to that conduct. And I think I want to address one point, too, real quickly, that this court in Guevara-Lopez and Cookson has said that a sentence that is deemed substantively unreasonable at the court of appeals may in fact be reasonable on remand if the district court provides an adequate explanation. And I think that's really important here because it shows the district court's explanation is really what matters. And that's what we're looking for on review. Well, so inadequate could mean insufficient explanation. I mean, I think that's what Gall talks about. So you can't even assess substantive reasonableness because you don't know what the court cared about here. Your argument seems to be that it was not insufficient. So I don't think you fall within the. That's right. OK, so your argument is squarely under the principles that you're asking us to extract from Allen. Is that correct? That's correct. But we also do have the failure to address the unwarranted sentencing disparities, which kind of goes hand in hand with that argument. Now, I know I'm running out of time, so I'll touch on that very briefly. But in Guevara-Lopez, this court said that when the court issues an upward variance of such significant magnitude, that addressing the unwarranted sentencing disparity that that sentence creates is a critical factor. And so here we have the magnitude of the variance paired with. We did provide the JSON data, which this court can take judicial review of or judicial notice of if it so chooses. Well, you provided it to us, not the district court. That's correct. Yes. But in Guevara-Lopez, this court made clear that that data can just be used to inform this court's reasonableness inquiry. Can be. Can be, yes. Does not have to be. That's correct. Yes. So here, the district court's cursory explanation of that factor mirrors the one provided in Guevara-Lopez, which this court deemed perfunctory. It just said, and I'm looking at page 77 on volume two, I've considered the need to avoid unwarranted sentencing disparities, but I'm not concerned that they will create unwarranted disparities. So just as a final point, like in Guevara-Lopez, the lack of explanation is compounded by the fact that the district court relied on unadjudicated, non-relevant conduct. I see I'm out of time. Thank you. Thank you, Jessica. Ms. Barry. Thank you, Your Honors. May it please the court. I am still Julia Barry for purposes of the record. This court should affirm the district court's sentence in this case. First, as this court recognized in McComb, there are few arenas where the realm of rationally available choices is as large as it is at sentencing. And Mr. under the deferential abuse of discretion standard was substantively reasonable. Why shouldn't we look at Alan certainly is different in so many ways factually. But why shouldn't we be comfortable extracting the principle that the appellant urges us to extract from it and apply it here? Your Honor, one, for the reasons that I set forth in my briefing, which is the clear factual distinction between them. But I understand your point about the principle. Repeatedly, this court has limited Alan to its facts. And repeatedly, this court has emphasized that Alan does not eliminate this court's ability to consider even uncharged conduct. Here we had conduct that was found by probable cause. But also importantly, as this court notes in Lucero, in Cortez, in Mateo, in Bright, Mr. Knowles did not factually object to the pre-sentence investigation report setting forth this non-relevant conduct in great detail. It is well established in this circuit that in order to trigger the district court's Rule 32i fact finding, a very specific factual objection must be waged. Defense counsel was given multiple opportunities, and I believe actually waived this objection because he indicated in his objections that he acknowledged the court could consider this relevant conduct, which it can under 3661 and under 3553a factors. Well, I don't think the argument that Alan is making is that it's off limits. It's that it was over relied on it to impose the variance. And I don't think that there is. First of all, I don't think that happened. And second of all, I don't think that there is anything stating. And I think that there is actually precedent to the contrary, indicating that it is not up to this court to reweigh the district court's factual determinations. The fact of the matter is that we review weighing, which is correct. It's sort of strange, but that's what we do. And so if we review the way in which the district court weighed the factors without reweighing them ourselves, why shouldn't we conclude that what mattered really the most to this judge was the uncharged or the charged the conduct that was ultimately not prosecuted here? Well, a few things. One, I don't believe that is what mattered the most to the judge. And two, even if it had, I do think that would be OK, given the full nature of her explanation. So Judge Dishman noted the nature and circumstances of the offense. And though she didn't use the magic words, history and characteristics of the defendant, that is what those other charges in the indictment were relating to. She illuminated several facts in addition to her disclaimer that she was very careful not to overweigh conduct for which Mr. Knowles had actually been convicted. The existence of a victim. I recognize that the appellant states that this is garden variety fraud. But respectfully, I've been doing this for over a decade and not every case has a clear victim. The fact that the defendant personally benefited from the fraud and that he was motivated by greed and deception. Not every case is motivated by greed and deception. We routinely have bank fraud cases in which a defendant is caught up in a series of lies and doesn't personally financially benefit to the tune of millions of dollars. The serious nature of the conspiracy that implicated Mr. Knowles' wife, the significant benefit of the plea deal that he received, the need to promote respect for the law and provide just punishment for the offense. I read the appellant's argument as a disagreement with the emphasis on the nature and circumstances of the offense and a need to reflect the seriousness of the offense, promote respect for the law and promote just punishment for the offense. But that is well within the district court's purview to consider. I think a helpful exercise would be to examine what would happen if the district court had done what the district court did in Allen. Mr. Knowles was charged in a 13 count speaking indictment with a large subset of those charges. And those charges involve millions and millions of dollars. The advisory guideline range, if he'd been convicted of those alternative charges, would have been approximately 80 months. And I don't think there's any dispute if you do the math under 2B1.1. If the district court here perhaps had said, you know what, I'm going to disregard everything about this conspiracy to commit bank fraud, and I'm going to charge you based upon the 20 million dollars, eight, ten million dollars, whatever the case may be in the bankruptcy fraud. And I'm going to substitute that alternative guideline range. And I'm going to say that you should be held accountable for that alternative guideline range. Then, maybe then we have an Allen problem, but we are far from Allen's purview. Well, can I probe that a little bit? Sure. Ms. Berry, so hypothetically, let's say the defendant says, look, Judge Dishman, you should at least consider the fact that I waived the statute of limitations on this charge. And the district court says, yeah, you just waived the statute of limitations because of what you just quoted. You got a favorable deal on this on this plea deal. And the defendant says, it wasn't favorable. I had a great defense. Judge Dishman doesn't know if it's a great defense. It never went to trial. But I wonder if what Judge Dishman did was different, but not qualitatively any better than what the district court did in Allen, because she arguably credited the assumption that it wasn't gratuitous. It wasn't just out of the kindness of his heart. He could waive the statute of limitations because he had a great deal, because he was guilty of these other charges. And the only reason that he waived the statute of limitations was he got this favorable plea deal. Isn't the fact that she said that this was a favorable plea deal, that you just quoted that language, doesn't that indicate an assumption that she credited the government's ability to prove those charges beyond a reasonable doubt, and the defendant never had the benefit of a trial? It means, I'm sorry, I did not mean to cut you off, Your Honor. It means that she credited the ability of the United States to prove those additional charges by a preponderance of the evidence. Which is the standard of sentence at sentencing, and which the United States could have handily done. I recognize that's not in the record. So how did Judge Dishman know that? Because the defense did not object. And when we were actually at the hearing, she indicated that she had reached out to counsel for both parties in advance and to determine what objections were still alive and had discerned from those conversations via email. So this is not part of the record, but this is how it happened, because I'm just indulging the court's point here for a minute. She then, in court, asked on the record both the government and defense counsel whether that was the case. And the defense reiterated that he had no objections. Now, at that point, you have had three opportunities to raise an objection to the ample, robust section of the pre-sentence investigation report that details offense behavior, not part of relevant conduct. But it has not been done so. It is unfair, and this court has said that repeatedly, to expect the district court to unilaterally engage in Rule 32i fact finding when there is not any sort of objection, despite multiple checks along the way. Thank you. If there are no further questions, I want to just respond to a couple of points here. One, the use of JSON data. I think it is very clear under Guevara-Lopez that the court will not substitute evidence lacking specific comparators for an otherwise adequate explanation. And I believe that the district court gave a very adequate explanation here. I'd also like to highlight that in Doty, I believe Judge Bacharach, it was you who noted that it is unfair to consider the district court to have abused its discretion if this JSON data was in no way before the district court. Now, certainly this court can consider it where there are other concerns about the length of the sentence. And there's concerns that there may be a substantive reasonableness challenge. But this court does not wholesale go back and reconsider data that was never presented to the district court. I mean, don't we generally consider disparities based on the guidelines themselves? We do, and the district court explicitly considered the guidelines in this case and determined that based upon the 3553A factors, they were insufficient. In addition, she did note that under Section 3553A-6, she had considered the need to avoid unwanted sentencing disparities, but that she was not concerned because she was, in fact, I would also note, just to respond to the appellant's point about that being a very perfunctory remark, this court has affirmed sentences containing similar upward variances or greater upward variance where the address of 3553A-6 is similarly limited. Valdez comes to mind, Cortez, Lucero, Doty. Over and over, this court has affirmed sentences that are well above the advisory guideline range. What matters is that the court explains its sentence. And I believe that the court did so here. If there are no further questions, I will touch briefly upon the breach of the plea agreement issue, because I do think that that is something that is important, because the United States takes its plea obligations very seriously. The United States' obligation not to further prosecute Mr. Knowles meant that it would not seek further charges or convict Mr. Knowles of charges that related to the additional conduct set forth in the indictment, not that his conduct could not and would not be used against him in sentencing. This was made clear in several portions of the plea agreement. First, in the promise itself, the promise itself clearly linked the dismissal of charges to the indictment itself. Making it clear that the word prosecute contemplated charges, not sentencing considerations. Second, and I think most importantly, the penultimate paragraph of the plea agreement explicitly reserved the right to inform the court and probation of any conduct that the United States deemed relevant to sentencing. And that's important because the United States cannot override the district court's need to consider the 3553A factors. And that includes section 3553A1, the nature and circumstances of the offense and history and characteristics of the defendant. And to do otherwise would be impeding upon the district court's purview. And in addition, and finally, an earlier provision explicitly stated that the allegations contained in the indictment could be used to prepare for sentencing. And it used the word sentencing, even assuming for the sake of argument that the United States had somehow breached that agreement. It can certainly not have been said to do so plainly absent a uniform definition of the word prosecute. And certainly this conduct for plain error purposes was well before the district court, both in the 17 page speaking indictment and the very robust section of the pre-sentence investigation report to which Mr. Knowles did not object. Does guideline 6B1.2A apply here? Excuse me? Does guideline 6B1.2A apply here? 6B1.2A. If you if you could enlighten me, Your Honor. It says a plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under provisions of section 1B1.3 in connection with the counts of which the defendant is convicted. I did not know that provision from memory, Your Honor. But I'm not sure given that I'm since you didn't say I thought maybe there was a reason it wasn't. No, Your Honor, that was not a deliberate omission on our part. It was simply the fact that we believe the language of the plea agreement was clear, even rendering it in the defendant's favor, given the context of the agreement and certainly given the context of the district court's considerations of sentencing. Thank you. You used your time. I generally like to give a little time for rebuttal. If there's something you want to say, you may. But you don't have to speak at all. Do you want do you want 30 seconds? But I'm going to cut you off immediately at 30 seconds. That's totally fine. Thank you. The first point I just want to touch on first as to the substantive reasonability of the sentence, I know the government mentioned a few cases where the sentence was much higher or the variance was higher. But in those cases, the court found that the district court's explanation of the sentence was otherwise adequate. And that was why the explanation of the A6 factor as perfunctory was permissible, because the rest of the explanation supported it. And I was going to touch on breach, but I'm out of time. Thank you. Thank you. Thank you, counsel. The case is admitted. Counsel are excused.